IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07cv00565 |
| | ) | |
| $4,266.75 in U.S. CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

This is a civil forfeiture action pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C). Before the court is the Government's Motion for Summary Judgment (Doc. 11), seeking to dismiss the claim of Antonio Lee Tanner ("Tanner") (Doc. 7). For the reasons set forth herein, the motion is granted.

**I.  BACKGROUND**

On March 31, 2007, Officer James Kerney of the Montgomery County, North Carolina, Sheriff's Office ("MCSO") was patrolling Interstate 73/74 when he pulled up behind a 2006 four-door Kia parked on the side of the highway to determine whether the occupants needed assistance. When Officer Kerney approached and talked to the driver of the Kia, he smelled the odor of alcohol. He further determined that the driver did not have a driver's

license, nor was any of the four occupants the registered owner of the vehicle.

Lieutenant Randy Binns ("Binns") of the MCSO then arrived to assist and approached the Kia's passenger door. He observed three beers on the ground beside the vehicle, one of which was opened and still draining beer onto the ground. Next to the beers was a folded twenty dollar bill containing a white residue and which later field tested positive for cocaine. Binns asked the Kia's occupants who the beer and the twenty dollars belonged to, but no one answered. Binns recognized one of the male passengers in the back seat as Tanner, who he knew was a local dealer and distributor of large quantities of cocaine base. Binns asked the driver for consent to search the vehicle, which she gave. In a pat-down safety frisk of the occupants, Binns found two large folds of cash in Tanner's front pockets. When Binns asked Tanner how much money was in his pockets, Tanner replied, "If you want to know, you will have to count it. Make it fast, I'm in a hurry." Binns counted the cash in Tanner's presence, determining it to be $4,266.75. Binns also found a plastic "FootAction" brand card in the Kia's center console that had white residue on it. It field tested positive for cocaine.

Tanner then accused Binns of being "small time" and boasted that he could never work drugs on Tanner's level because he (Tanner) "moved kilos." Tanner then began using profanity.

2

Binns advised him that the money was being seized for further investigation and to determine whether Tanner owed any drug taxes in Moore County because of his known history as a drug trafficker. When Binns also advised Tanner that he would be arrested if he continued to use profanity, Tanner cursed, "F--k you, son of a b-tch."[1] This caused Tanner to be arrested for disorderly conduct. Later, after Tanner was transported to jail, he threatened Binns, telling him he was going to "take [him] to the concrete." Tanner was further charged with communicating threats and placed on a $2,500 secured bond.

Subsequently, Binns determined that Tanner did not owe any drug taxes. He contacted Janis Dinschel, Special Agent, Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), to request the seizure of the currency based on Tanner's known history of drug trafficking. After speaking to Special Agent Dinschel, Binns had a narcotics detection canine check the currency for the presence of controlled substances. Binns placed the currency in an envelope among eight other envelopes containing paper and had them sniffed by "Ricky," the MCSO's narcotics detection canine. Ricky, who has made several accurate positive alerts to the presence of controlled substances over the past three years,

---

[1] Profanity has been altered by the court; there is no need to propagate the federal reporters with such literary baseness.

positively alerted to the envelope containing the seized currency. Binns converted the currency to a money order and turned it over to Special Agent Dinschel.

After the Government filed this civil forfeiture action (Doc. 1), Tanner filed an "Answer" claiming entitlement to the defendant currency (Doc. 7).[2] The Government then conducted discovery against Tanner. In response to written interrogatories (Doc. 12 Ex. C), Tanner, though claiming that he was harassed at the time of the seizure, provides no evidence whatsoever to support even an inference that the seized defendant currency was the result of a legitimate business activity. Specifically, and while denying that the money had anything to do with drugs, he admits that he has "worked for several employers" but has "just never filed any taxes." Tanner does not list a single employer. He also refuses to list a single source of any payment or income received, whether earned or unearned; he has listed no gifts, loans, or any other legitimate source of the funds. Tanner claims never to have used a bank account. He claims he has no utilities because he stays with his parents; otherwise, he has refused to provide any information on the amounts he spends monthly for a single expense, including food, clothing, shelter, entertainment, insurance, medical services, transportation, education, child

---

[2] The Government does not contest the timeliness of Tanner's filing.

4

support, and a host of other items.  Tanner also claims that his legal services have been paid through "court appointed lawyers" and "a lot of family support."  He says he "can't remember" a single telephone number he has had in the past five years.  When asked to provide full and complete details of his activities in the 72 hours prior to the seizure, he refused to do so other than to say "I wasn't around any drugs during that time, I wasn't with nobody except the night they took my money."  Since January 1, 2002, Tanner "can't remember" ever having more than $250 in his pocket at any one time.  Tanner does acknowledge that he was imprisoned on drug charges in 1999.  There is no evidence that any of Tanner's interrogatory responses were verified.

The Government also served a request for documents on Tanner.  (Doc. 12 Ex. C.)  Tanner indicated he had no documents responsive to a single request, which included the following: any document that would support a contention that the defendant property was not used or intended to be used in violation of the drug laws; any federal, state, local or other tax return, including wage and earnings statements, for the last five years; and any check book register, bank or savings account document, and credit card account documents that reflect transactions occurring within the last five years.  Further, Tanner refused

5

to execute releases for any Internal Revenue Service, employment or financial records.

In support of its motion for summary judgment, the Government has provided Tanner's criminal history. It indicates that on November 30, 1999, Tanner was convicted of the felonies of possession with intent to sell and deliver cocaine, possession with intent to sell and deliver marijuana, and maintaining a place to keep controlled substances. On October 27, 2003, Tanner was convicted of the misdemeanor of maintaining a vehicle with controlled substances, after having been arrested for that and possession of marijuana, cocaine and drug paraphernalia. On July 6, 2004, Tanner was convicted of the misdemeanor of possession of marijuana. On August 8, 2005, he was convicted of possession with intent to sell and deliver cocaine.[3]

The Government further has provided information that in late 2004 an ICE confidential informant (CI) observed Tanner meeting with an individual on Community Road in Eagle Springs, North Carolina, which the CI identified as the road Tanner uses for drug deliveries. Tanner also lives in Eagle Springs. A

---

[3] Tanner was also found to possess 40 grams of cocaine base on September 16, 1997, and was arrested for trafficking in cocaine, trafficking cocaine by possession, and possession with intent to distribute. Those charges appear to have been dismissed after he was imprisoned on December 1, 1999, pursuant to his November 30, 1999, felony convictions.

6

search of the individual after Tanner's meeting resulted in the seizure of cocaine base and the arrest of the individual.

Finally, on April 6, 2005, Special Agent Dinschel and Moore County vice detectives stopped Tanner for driving with a revoked license. After searching Tanner's car subsequent to consent, Special Agent Dinschel seized a notebook that appeared to contain drug tally records and a letter from Tanner to a relative that read as follows:[4]

> To: Walt Love (alias for Patrick Tanner)
>
> Guess what! You was right about (name redacted . . .), that nigga got popped with two "ounces" of crack last summer right after the beach. He done busted everybody in Montgomery County. He busted Floyd (referring to Floyd SPENCER), Allen (referring to Alan LITTLE), I think he got Vinney (referring to Venancio REZA), and Chubb too but I ain't for sure. He tried to get me but I was too smart for him and Eye Love (referring to Tremaine Jones) they tried to get two of them thangs from me but I knew them niggas wasn't right. The sh-t done hit the fan now. Eye Love playing stupid, but them niggas was working together the hole time. I wouldn't be surprised if them niggas end up on the front page. I'll halla back after they start picking muthaf-ckers up,
>
> Loc (alias for Antonio Tanner).

**II. ANALYSIS**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of

---
[4] Special Agent Dinschel added the remarks in parentheses.

7

law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Although a court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), mere allegations or denials in a pleading are not sufficient to defeat a motion for summary judgment. Fed. R. Civ. P. 56(e)(2); cf. Anderson, 477 U.S. at 249 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.").

The Government's civil forfeiture action against the defendant currency is brought pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981. Section 881(a)(6) provides, in pertinent part:

> (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> . . . .
>
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended

8

>       to be used to facilitate any violation of
>       this title.

Section 981(a)(1)(C) provides, in pertinent part:

>   (a)(1) The following property . . . is subject to
>       forfeiture to the United States:
>
>   . . . .
>
>   (C)   Any property, real or personal, which
>         constitutes or is derived from proceeds
>         traceable to . . . any offense constituting
>         "specified unlawful activity" (as defined
>         in . . . [18 U.S.C. § 1956(c)(7)]), or a
>         conspiracy to commit such offense.

In the civil forfeiture context, the Government bears the burden of establishing by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). To establish an "innocent owner" defense, the burden rests with the claimant to establish by a preponderance of the evidence that the seized property is not subject to forfeiture. Id. § 983(d)(1).

In determining whether the Government has met its burden, all the evidence is considered as a whole. Here, the MCSO officers found controlled substances during the search of the vehicle and its environs. See United States v. $84,615 in U.S. Currency, 379 F.3d 496, 502 (8th Cir. 2004). The MCSO officers positively identified cocaine on the FootAction card in the vehicle's center console as well as on the twenty dollar bill found on the ground immediately outside the vehicle. Because

9

officer Kerney smelled the odor of alcohol emanating from the Kia and the bill was found nearby resting next to an open, and flowing, beer, it is reasonable to infer that both had been recently deposited by the vehicle's occupants. An experienced and reliable narcotics detection canine also positively alerted to the presence of a controlled substance on the seized currency. United States v. $117,920.00 in U.S. Currency, 413 F.3d 826, 829 (8th Cir. 2005).

There is also substantial evidence that Tanner has an established history of drug trafficking. He has been convicted of multiple drug-related felonies, including two felony convictions for possession with intent to sell and deliver cocaine in 1999 and 2005. United States v. Thomas, 913 F.2d 1111, 1115, 1116 (4th Cir. 1990).[5] Tanner was also implicated in a drug transaction by an ICE informant and by the discovery in his vehicle of what appear to be a drug tally record and a letter discussing a drug investigation. Id. at 1117. Though the drug transaction and vehicle search had occurred

---

[5] Thomas was decided prior to the enactment of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), codified at 18 U.S.C. § 983, which increased the government's burden from showing probable cause for forfeiture to proving that the property is subject to forfeiture by a preponderance of the evidence. United States v. Mondragon, 313 F.3d 862, 865 (4th Cir. 2002). Pre-CAFRA cases are still relevant, however, because "[f]actors that weighed in favor of forfeiture in the past continue to do so now — with the obvious caveat that the government must show more or stronger evidence establishing a link between forfeited property and illegal activity." United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670.00), 403 F.3d 448, 469 (7th Cir. 2005).

10

approximately two years prior to the seizure, it is recognized that drug trafficking is a continuing enterprise. <u>United States v. Brewer</u>, 204 F. App'x 205, 208 (4th Cir. 2006) (citing United States v. Farmer, 370 F.2d 435, 439 (4th Cir. 2004)). Indeed, at the time of the seizure Tanner boasted that he "moved kilos," indicating that he sold cocaine on an extensive basis.

The Government has also demonstrated the absence of any legitimate source of income for the defendant currency. By his own admission, Tanner has never filed a tax return, has no financial accounts, and possesses no personal property. Despite the large sum of cash he was carrying on March 31, 2007, he "can't remember" the last time he had $250 in his pocket. Tanner did not list a single employer for whom he has worked, nor has he been able to list a single source of currency. Tanner also refuses to provide any authorizations for the Government to collect any tax returns or financial or other employment records. The court finds that Tanner's legitimate income was insufficient to explain the $4,266.75 found in his possession, which suggests that the money was derived illegally. <u>Thomas</u>, 913 F.2d at 1114, 1115; <u>see</u> <u>United States v. $252,300.00 in U.S. Currency</u>, 484 F.3d 1271, 1275 (10th Cir. 2007); <u>United States v. $174,206.00 in U.S. Currency</u>, 320 F.3d 658, 662 (6th Cir. 2003). Based on all the above, the court finds that the Government has demonstrated, by a preponderance of the evidence,

11

that the defendant currency is subject to forfeiture as proceeds traceable to an illegal drug transaction or a conspiracy to commit the same.

Having made this showing, the Government has now shifted the burden to Tanner to establish by a preponderance of the evidence that the seized defendant property is not subject to forfeiture. 18 U.S.C. § 983(d)(1). Tanner must come forward and rebut the substantial evidence establishing that the defendant currency constitutes proceeds traceable to an exchange for a controlled substance or to establish that he is an "innocent owner". Id.

Tanner responded to the Government's motion with a simple, unsworn letter to the clerk of court. (Doc. 14.) Rule 56, of course, requires evidence to be sworn or offered under the penalty of perjury. Fed. R. Civ. P. Rule 56(e)(2); Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1305-06 (5th Cir. 1988); United States v. 1984 White Sonic Speedboat S/N JCL24066M84C, No. 2005-0107, 2008 U.S. Dist. LEXIS 90435, at *10 (D.V.I. Nov. 5, 2008). Even if the letter were sworn, it would fail on the merits because Tanner never provides sufficient evidence to create a genuine issue of material fact. In that letter, Tanner assails the Government for the absence of any criminal charge arising out of the seizure, noting that no cocaine was found at the time other than the residue on the FootAction card and

12

twenty dollar bill, as if that were unimportant. Tanner also argues that no one provided consent to search the vehicle, though he fails to demonstrate standing to contest the search.[6] In the end, Tanner denies that the money was the result of any illegal drug activity, sidesteps the issue of its *source*, and relies on an argument as to what he hopes to do with it: stating it was "just enough money for me to go to Barber School."

Tanner's responses to the Government's discovery requests fare no better. Importantly, there is no evidence that Tanner ever verified his responses. In addition, the responses provide no evidence that the defendant currency resulted from legitimate activities other than containing a denial that it was related to illegal drug activity. At this stage, Tanner cannot rely on his bald-faced and unsupported denials. Fed. R. Civ. P. 56(e)(2); Liu v. T&H Mach., Inc., 191 F.3d 790, 795, 797 (7th Cir. 1999). Nor can he rely on vague statements that the proceeds were from "several employers" without listing any evidence to support such a claim. Fed. R. Civ. P. 56(e)(2); Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991). The court therefore finds that Tanner has failed to provide any evidence to rebut the

---

[6] Tanner offered no proof of ownership in the vehicle and, thus, has no standing to contest its search. United States v. Rusher, 966 F.2d 868, 874 (4th Cir. 1992); see United States v. Howard, 129 F. App'x 32, 34-35 (4th Cir. 2005).

13

Government's showing and to create a genuine issue of material fact as to the source of the defendant currency.

**III. CONCLUSION**

For the foregoing reasons, the Government's motion for summary judgment (Doc. 11) is GRANTED.

/s/   Thomas D. Schroeder
United States District Judge

December 11, 2008